UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONROE COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br> vs.<br><br>ASTRAZENECA PLC, PASCAL SORIOT, MARC DUNOYER and MENELAS PANGALOS,<br><br>      Defendants. | Case No.  1:21-cv-00722-JPO<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF NUGGEHALLI BALMUKUND NANDKUMAR FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL |
| VLADIMIR ZHUKOV, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br> v.<br><br>ASTRAZENECA PLC, PASCAL SORIOT, MARC DUNOYER, and MENELAS PANGALOS,<br><br>      Defendants. | Case No.  1:21-cv-00825-JPO |

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 2

ARGUMENT ............................................................................................................................ 5

I. THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES .. 5

II. NANDKUMAR SHOULD BE APPOINTED LEAD PLAINTIFF ................................... 7

    A. Nandkumar Is Willing to Serve as Class Representative ......................................... 7

    B. Nandkumar Has the "Largest Financial Interest" in the Related Actions .............. 8

    C. Nandkumar Otherwise Satisfies the Requirements of Rule 23 .............................. 9

    D. Nandkumar Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses ........................................................................... 11

III. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ......... 12

CONCLUSION ....................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB),
    2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) .......................................................................9, 10

*Bassin v. Decode Genetics, Inc.*,
    230 F.R.D. 313 (S.D.N.Y. 2005) ................................................................................................6

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
    141 F.R.D. 229 (2d Cir. 1992) ................................................................................................10

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
    252 F.R.D. 188 (S.D.N.Y. 2008) ..............................................................................................6

*Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN),
    2018 WL 3093965 (S.D.N.Y. June 21, 2018) .........................................................................8

*Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS),
    2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) ........................................................................11

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) ............................................................................................11

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .....................................................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
    2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ........................................................................8, 13

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992) ...................................................................................................10

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
    2009 WL 2259502 (S.D.N.Y. July 29, 2009) ..........................................................................6

*In re Molson Coors Brewing Co. Sec. Litig.*,
    233 F.R.D. 147 (D. Del. 2005) ...............................................................................................12

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) .........................................................................................8

*In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS),
    2008 WL 2811358 (S.D.N.Y. July 7, 2008) ..........................................................................10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ...................................................................................10

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) ....................................................................................6

*Janbay v. Canadian Solar, Inc.*,
    272 F.R.D. 113 (S.D.N.Y. 2010) ..................................................................................10

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990) ........................................................................................6

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ......................................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) ..................................................................................12

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
    1997 WL 461036 (N.D. Ill. Aug. 6, 1997) .....................................................................8

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993) ..........................................................................................6

*Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN),
    2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ................................................................8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ....................................................................................9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008) ..........................................................................12

## **Statutes**

15 U.S.C. § 78u-4(a)(3) ......................................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................... *passim*

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ....................................................................................12

Private Securities Litigation Reform Act of 1995 ................................................... *passim*

## **Rules**

Fed. R. Civ. P. 23 ........................................................................................................ *passim*

Fed. R. Civ. P. 42 .......................................................................................................1, 5, 6

Nuggehalli Balmukund Nandkumar (a/k/a Nand Kumar) ("Nandkumar")[1] respectfully submits this memorandum of law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Federal Rule of Civil Procedure 42, for an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Nandkumar as Lead Plaintiff on behalf of a class consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired AstraZeneca plc ("AstraZeneca" or the "Company") securities between May 21, 2020 and November 20, 2020, both dates inclusive (the "Class Period") (the "Class"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

PRELIMINARY STATEMENT

The Complaints in the Related Actions allege that Defendants defrauded investors in violation of the Exchange Act. AstraZeneca investors, including Nandkumar, incurred significant losses following the disclosure of the Company's alleged fraud, which caused AstraZeneca's share price to fall sharply, damaging Nandkumar and other AstraZeneca investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In connection with his purchases of AstraZeneca securities during the Class Period, Nandkumar incurred losses of approximately $114,175. *See* Hood Decl., Ex. B.

---

[1] Nandkumar pursues claims in this litigation both on his own behalf and on behalf of his son, Shawn Kumar, from whom he has received a valid assignment of those claims. *See* Declaration of J. Alexander Hood II ("Hood Decl."), Exhibit ("Ex.") A.

Accordingly, Nandkumar believes that he has the largest financial interest in the relief sought in the Related Actions.

Beyond his considerable financial interest, Nandkumar also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Nandkumar has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Nandkumar respectfully requests that the Court enter an order consolidating the Related Actions, appointing Nandkumar as Lead Plaintiff for the Class, and approving his selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the complaints of the Related Actions, AstraZeneca is one of the largest biopharmaceutical companies in the world. The Company is primarily known for its development of drugs to treat cancer, asthma, and other chronic conditions, and has not historically specialized in vaccine development.

In April 2020, the Company partnered with Oxford University to develop a potential recombinant adenovirus vaccine for COVID-19, later dubbed AZD1222. Oxford University's work on developing a COVID-19 vaccine began in January 2020, almost as soon as the virus was recognized globally. Volunteers for the first clinical trial were recruited and screened in March 2020, and a Phase 1 clinical trial was launched the following month.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) initial clinical trials for AZD1222 had suffered from a critical manufacturing error, resulting in a substantial number of trial participants receiving half the designed dosage; (ii) clinical trials for AZD1222 consisted of a patchwork of disparate patient subgroups, each with subtly different treatments, undermining the validity and import of the conclusions that could be drawn from the clinical data across these disparate patient populations; (iii) certain clinical trial participants for AZD1222 had not received a second dose at the designated time points, but rather received the second dose up to several weeks after the dose had been scheduled to be delivered according to the original trial design; (iv) AstraZeneca had failed to include a substantial number of patients over 55 years of age in its clinical trials for AZD1222, despite this patient population being particularly vulnerable to the effects of COVID-19 and thus a high priority target market for the drug; (v) AstraZeneca's clinical trials for AZD1222 had been hamstrung by widespread flaws in design, errors in execution, and a failure to properly coordinate and communicate with regulatory authorities and the general public; (vi) as a result of all the foregoing, the clinical trials for AZD1222 had not been conducted in accordance with industry best practices and acceptable standards and the data and conclusions that could be derived from the clinical trials was of limited utility; (vii) as a result of all the foregoing, AZD1222 was unlikely to be approved for commercial use in the United States ("U.S.") in the short term, one of the largest potential markets for the drug; and (viii) as a result, the Company's public statements were materially false and misleading at all relevant times.

On November 23, 2020, AstraZeneca issued a release announcing the results of an interim analysis of its ongoing trial for AZD1222. Although the release claimed that the drug candidate

had met its primary efficacy endpoints, the announcement immediately began to raise questions among analysts and industry experts. AstraZeneca disclosed that the interim analysis involved two smaller scale trials in disparate locales—the United Kingdom ("U.K.") and Brazil—that, for unexplained reasons, employed two different dosing regimens.

On this news, AstraZeneca's American Depository Share ("ADS") price fell nearly $2.00 per share during the trading day on November 23, 2020, on extremely high trading volume of over 13 million ADSs traded.

To limit the fallout, AstraZeneca hastily put out statements defending its interim analysis and held conference calls with analysts covering the Company. However, the Company's responses raised more questions than answers and cast further doubt on the integrity of the trials' design, data, and conclusions. Most shockingly, AstraZeneca revealed that the half dosing regimen was not a part of the original trial design, but rather was forced upon the Company because of a manufacturing error discovered early in the trial process. Specifically, AstraZeneca discovered that a manufacturer had underpredicted the dose of the vaccine by half in the U.K. trial.

Additional damaging revelations came to light. For example, Dr. Moncef Slaoui, the head of Operation Warp Speed, told reporters that the half-strength dose had not been initially tested in people over the age of 55, even though this population was the most vulnerable to COVID-19. He also stated that if AstraZeneca could not clearly explain the discrepancies in its trial results, the results would most likely "not be sufficient for approval" for commercial sale in the U.S. Moreover, certain trial participants received their second dose weeks later than originally planned. The trials also amalgamated a "bewildering array" of experimental groups and subgroups, each receiving subtly different treatments, and inexplicably excluded certain subgroups from the reported interim analysis. AstraZeneca further failed to timely provide data and information to the

U.S. Food and Drug Administration after the emergence of neurological symptoms in two clinical trial participants earlier in the year, which had resulted in a temporary halt to U.S. clinical trials.

Analysts and reporters widely criticized the faulty trial design and failure of AstraZeneca to be forthright with the public and investors, describing AstraZeneca's interim results as a "mess," riddled with "irregularities and omissions," and the product of "cherry-picked . . . data" and "very shaky science." For example, on November 25, 2020, *Wired* issued a comprehensive report on AstraZeneca's botched trial results entitled "The AstraZeneca Covid Vaccine Data Isn't Up to Snuff."

As negative news reports continued to reveal previously undisclosed problems and flaws in AstraZeneca's clinical trials for AZD1222, AstraZeneca's ADS price fell to $52.60 per share by market close on November 25, 2020, a 5% decline over three trading days in response to adverse news on abnormally high trading volume.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the plaintiffs in the Related Actions and other Class members have suffered significant losses and damages.

ARGUMENT

I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *1-*3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action is brought against the Company, as well as certain officers or directors of the Company, in connection with violations of the federal securities laws. Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of AstraZeneca's securities and subsequently damaged the Class when the Company's share price plummeted as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 WL 2259502, at *2 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## II.     NANDKUMAR SHOULD BE APPOINTED LEAD PLAINTIFF

Nandkumar should be appointed Lead Plaintiff because, to his knowledge, he has the largest financial interest in the Related Actions and otherwise satisfies the requirements of Rule 23.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Nandkumar satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### A.     Nandkumar Is Willing to Serve as Class Representative

On January 26, 2021, counsel for plaintiff in the first-filed of the Related Actions caused a notice to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "PSLRA Notice"), which announced that a securities fraud class action had been filed against Defendants, and which advised investors in AstraZeneca securities that they had 60 days from the

7

date of the PSLRA Notice—*i.e.*, until March 29, 2021—to file a motion to be appointed as lead plaintiff.  *See* Hood Decl., Ex. C.

Nandkumar has filed the instant motion pursuant to the PSLRA Notice, and has attached a sworn Certification attesting that he is willing to serve as a representative for the Class, and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. D.  Accordingly, Nandkumar satisfies the first requirement to serve as Lead Plaintiff of the Class.

B. Nandkumar Has the "Largest Financial Interest" in the Related Actions

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of his knowledge, Nandkumar has the largest financial interest of any AstraZeneca investor or investor group seeking to serve as Lead Plaintiff.  For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997).  In accord with other courts nationwide,[2] these *Lax* factors have been adopted and routinely applied by courts in this judicial district.  *See, e.g., Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov.

---

[2] *See, e.g., In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

8

13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

During the Class Period, Nandkumar: (1) purchased 27,500 AstraZeneca shares; (2) expended $1,542,718 on his purchases of AstraZeneca shares; (3) retained 23,500 of his AstraZeneca shares; and (4) as a result of the disclosures of the fraud, incurred losses of approximately $114,175 in connection with his Class Period purchases of AstraZeneca securities. *See* Hood Decl., Ex. B. To the extent that Nandkumar possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

  C. Nandkumar Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). Moreover, "[t]ypicality and adequacy of representation are the only

9

provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Aude*, 2018 WL 1634872, at *3 ("[C]ourts need only consider the typicality and adequacy requirements."). Here, the complaints in the Related Actions sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Nandkumar.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

The claims of Nandkumar are typical of those of the Class. Nandkumar alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or omitting to disclose material facts concerning AstraZeneca. Nandkumar, as did all Class members, purchased AstraZeneca securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove AstraZeneca's share price downward. These

shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Nandkumar has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as the Related Actions, and submits his choice of Pomerantz to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). There is no evidence of antagonism or conflict between the interests of Nandkumar and the interests of the Class. Moreover, Nandkumar has submitted a signed Certification declaring his commitment to protect the interests of the Class (*see* Hood Decl., Ex. D), and the significant losses incurred by Nandkumar demonstrate that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating his adequacy, Nandkumar has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his experience hiring and overseeing counsel, his understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See* Hood Decl., Ex. E.

>   D.   Nandkumar Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Nandkumar as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)     will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of Nandkumar to fairly and adequately represent the Class has been discussed above.  Nandkumar is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Nandkumar should be appointed Lead Plaintiff for the Class.

III.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected Lead Plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *see also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Nandkumar has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is a premier firm, highly experienced in the areas of securities litigation and class action lawsuits, which has successfully prosecuted numerous such actions on behalf of investors over its 80+ year history, as detailed in its firm resume.  *See* Hood Decl., Ex. F.  Pomerantz recently secured a recovery of $3

12

billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *Id*. Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company. *See id.* As a result of its extensive experience in similar litigation, Nandkumar's choice of counsel, Pomerantz, has the skill, knowledge, expertise, resources, and experience that will enable the firm to prosecute the Class's claims in this litigation effectively and expeditiously. The Court may be assured that by approving Nandkumar's selection of Pomerantz as Lead Counsel, the Class members will receive the best legal representation available. Thus, Nandkumar respectfully urges the Court to appoint Pomerantz to serve as Lead Counsel.

## CONCLUSION

For the foregoing reasons, Nandkumar respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Nandkumar as Lead Plaintiff for the Class; and (3) approving proposed Lead Plaintiff's selection of Pomerantz as Lead Counsel for the Class.

Dated:  March 29, 2021                          Respectfully submitted,

                                                     POMERANTZ LLP

                                                    */s/ J. Alexander Hood II*
                                                    J. Alexander Hood II
                                                    Jeremy A. Lieberman
                                                    James M. LoPiano
                                                    600 Third Avenue
                                                    New York, New York 10016
                                                    Telephone: (212) 661-1100
                                                    Facsimile: (212) 661-8665
                                                    ahood@pomlaw.com

jalieberman@pomlaw.com
jlopiano@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Nuggehalli Balmukund Nandkumar and Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Nuggehalli Balmukund Nandkumar*